IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO.   3:22-cr-25 |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S SENTENCING |
| vs. | ) | MEMORANDUM |
| | ) | |
| GERALD BRIAN HOARD, | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................................1

II.     PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A
        SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS
        SUFFICIENT…………..………………....…………………………………………………..2

III.    CONCLUSION....................................................................................................................5

**I.      INTRODUCTION**

On July 18, 2022, Gerald Brian Hoard accepted responsibility for his conduct by pleading guilty to a one-count information, alleging attempted transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470.   This matter is scheduled for a sentencing hearing on November 28, 2022, at 1:00 p.m.   The final presentence report provides a total offense level of 16, and a criminal history category of I, resulting in an advisory sentencing guideline range of 21 to 27 months' imprisonment.   (PSR, ¶ 87).   This guideline range is uncontested.

However, Mr. Hoard is seeking a downward variance, asserting a sentence below the advisory guideline range would be sufficient, but not greater than necessary, to fulfill the

purposes of sentencing.   A variance is supported by mitigating circumstances in Mr. Hoard's personal history, including low intellectual functioning, adverse early childhood experiences, and continued adulthood challenges.

## II.   PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUFFICIENT.

### A.   Legal authority

It is well established that the court shall consider all factors set forth in 18 U.S.C. § 3553(a) to determine whether a sentence is sufficient, but not greater than necessary, to address the sentencing purposes outlined in paragraph 2 of this subsection.   *See United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005).   Paragraph 2 provides the following stated purposes:

> "The need for the sentencing imposed - A) to reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The sentencing factors to be considered by the court include the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. 18 U.S.C. § 3553(a)(1).   In addition to these sentencing factors, the court is permitted to entertain policy considerations pertinent to the relevant guideline section.   *Rita v. United States*, 127 S. Ct. 2456, 24654 (2007).   The court may vary outside of the guideline range based on a policy disagreement with the underlying guideline section.   *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).   The sentencing court "may not presume that the guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented to arrive at a sentence that is sufficient, but not greater than necessary."   *Gall v. United States*, 128

S. Ct. 586, 597 (2007).

    B.  <u>Mr. Hoard's history and characteristics support a variance</u>.

Mr. Hoard's personal history is mitigating and supports a downward variance. Mr. Hoard suffers from significant developmental delays, evident since early childhood. He was born to a teenage mother, who, for unknown reasons, abandoned Mr. Hoard at the hospital after his birth. (PSR, ¶ 49). As a result, he entered into the foster care system as an infant. *Id*. He remained in foster care until he was placed with his adoptive family at approximately the age of three.[1] *Id*. His adoptive parents were both supportive and actively involved in his life. (*See* PSR, ¶¶ 51 and 52). They were generally aware of Mr. Hoard's special needs at the time of his placement and adoption. They continued to seek resources to assist his development. He received treatment from Vera French from early childhood, until the age of 42.[2] He also participated in Special Olympics and received services through the Handicap Development Center. (PSR, ¶ 49). In school, he was placed in special education classes as early as kindergarten. (PSR, ¶ 69). Special education services were in place throughout Mr. Hoard's school career. *Id*. Despite challenges he had with learning, he graduated high school in a timely manner. *Id*. As an adult, he receives social security disability benefits based on his low intellectual functioning as well as a concurrent attention deficit hyperactivity disorder (ADHD) diagnosis. (PSR, ¶ 73).

Mr. Hoard's intellectual limitations have significantly impacted his daily life. As such, he receives social security disability benefits. (*See* PSR, ¶ 73). His employability has been limited by his disability. Prior employment includes, retail, food preparation, and factory work,

---

1 Vera French records indicate this occurred earlier, at the age of two.
2 The presentence report indicates mental health services began at age 42, however, records include psychological evaluations at the ages of 5 and 6.

commensurate with his skill level. (PSR, ¶¶ 74-76). He was employed at Wal-Mart, in the capacity of greeting customers as they entered the store, at the time of his arrest in the instant matter. (PSR, ¶ 75). His aunt, who has also been a supportive figure in Mr. Hoard's life, describes him as a hard worker, indicating he takes initiative in obtaining and maintaining employment. (PSR, ¶ 77). He has also been a reliable and dedicated worker. *Id*.

Throughout most of Mr. Hoard's life, his parents provided guidance and support, even after Mr. Hoard became an adult. However, Mr. Hoard's father passed away in 2018, and his mother currently resides in an independent living facility for seniors. (PSR, ¶¶ 51 & 52). Thus, the level of reliance Mr. Hoard has had on his parents, throughout much of his life, is no longer possible. Further, he has a difficult time finding friends who are compatible and difficulty discerning between genuine and opportunistic friendships. (*See* PSR, ¶ 50) (describing Mr. Hoard's aunt's perception that he needs to learn how to identify those who he can trust). He reports having no friends in adulthood. (PSR, ¶ 50).

A significant aspect of Mr. Hoard's history that is beneficial to his future success, is the lack of substance abuse history. (*See* PSR, ¶¶ 65-67). His rehabilitation needs do not include various complexities inherent to the management of drug or alcohol dependency.

Mr. Hoard has never served a previous term of incarceration. Any sentence of imprisonment would be severe to Mr. Hoard. Based on his intellectual limitations, he would more easily be taken advantage of by others. While incarcerated at the Muscatine County Jail, he has suffered from situational anxiety. (PSR, ¶¶ 63 & 64). He has been prescribed daily medication to address the anxiety. *Id*. More generally, a prison sentence would have a more punitive effect on him than on someone who has been to prison before and chosen to reoffend.

This consideration is relevant to the Court's determination of what type of sentence would constitute "just punishment."  *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006).

Following Mr. Hoard's sentence, there will be a mandatory period of supervised release. His recommended conditions include:  sex offense-specific treatment, periodic submission to polygraph testing, no contact with minors, no unauthorized access to a computer or related device, no possession or viewing of pornographic materials, a mental health evaluation, compliance with sex offender registration and a submission to searches conducted by the probation office.  Thus, the supervision will result in close monitoring over time, offering protection to the community and continued support for Mr. Hoard.  Mr. Hoard's low criminal history score demonstrates his ability to adhere to the accompanying structure.

Based on all of the relevant 18 U.S.C. § 3553(a) factors, a variance is appropriate in the present case.  As outlined above, Mr. Hoard's personal history presents a number of mitigating factors in support of a downward variance.

### III.   CONCLUSION

WHEREFORE, Mr. Hoard respectfully requests that the Court impose a sentence consistent with the arguments in this sentencing memorandum.

Respectfully Submitted,

FEDERAL DEFENDER'S OFFICE
CBI Bank & Trust Building
101 W. 2nd Street, Suite 401
Davenport, Iowa 52801-1815
TELEPHONE:  (563) 322-8931
TELEFAX:  (563) 383-0052
EMAIL:  diane_helphrey@fd.org

By:  /s/*Diane Helphrey*
     **Diane Helphrey**
     Assistant Federal Defender
     ATTORNEY FOR DEFENDANT

cc:  Clifford Cronk, III, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on November 21, 2022, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
     /s/